CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 29 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RUSSELL RAY BAMBARGER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:12cv280 |
| | ) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| | ) |
| AMERISTEP, INC., and WAL-MART | ) |
| STORES EAST, LP, | ) By: Samuel G. Wilson |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff Ray Bambarger brings this products liability action under the court's diversity jurisdiction, 28 U.S.C. § 1332, against distributor Ameristep, Inc. and retailer Wal-Mart Stores East, LP (collectively "Defendants"). Bambarger alleges Defendants are responsible for distributing and selling a defectively manufactured 1996 Grizzly Tree Step that injured him when it broke and caused him to fall from a tree while he was hunting. Defendants have moved for summary judgment, arguing that despite Bamberger having had a fair and adequate opportunity to conduct discovery, his claim rests only on his experts' inadmissible speculation. The court agrees and will, therefore, grant the motion.

I.

For purposes of this motion, the court assumes the following facts. Tree steps are metal S-shaped bars that screw into a tree trunk to create steps for climbing. On October 9, 2009, Bambarger was hunting in Floyd County, Virginia and using tree steps, including a 1996 Model 104 Grizzly Tree Step (the "Tree Step") that he purchased from a Wal-Mart Supercenter in Christiansburg, Virginia years earlier. Bambarger had used the Tree Step many times before

1

without incident. On this particular day, as Bambarger climbed, the Tree Step broke and he fell twenty-five feet to the ground.

During approximately seven months of discovery, Bambarger obtained relevant information from Defendants and others that he provided to his experts. He then identified two experts, produced their Rule 26(a)(2) reports, and permitted Defendants to depose them without objection. His experts theorized the Tree Step had a defect caused by the inadvertent introduction of hydrogen into the steel during manufacturing.[1] Under this theory, the Tree Step may have then developed resulting embrittlement, a weakening of steel that can lead to cracking and eventually a fracture. Both experts conceded, however, that they had no useful evidence from which they could conclude with confidence that hydrogen actually was introduced during manufacturing as they had theorized. (See Dowling Dep. 44:14-16, ECF No. 64-3 at 7; 50:20-25, ECF No. 63-11 at 12; 54:10-11, ECF No. 64-3 at 8; Kampe Dep. 54:8-16, ECF No. 63-9 at 8) At best, in the words of one expert, Norman E. Dowling, Ph.D., P.E., the available information was too "cryptic" to evaluate. (See Dowling Dep. 54:10-11; ECF No. 64-3 at 8) Stephen L. Kampe, Ph.D., the one expert who opined that hydrogen was introduced during the manufacturing process, could say only that plating is a "notorious source of hydrogen" generally and could not offer opinions as to this case without "making certain assumptions or speculating." (Kampe Dep. 103:23-104:2, ECF No. 64-2 at 11-12; 54:8-16, ECF No. 63-9 at 8) He also could not say the Tree Step broke as a result of embrittlement caused by the manufacturing process, as opposed to embrittlement caused by some later circumstance. (See Kampe Dep. 51:10-14, ECF No. 63-9 at 5; 87:2-9, ECF No. 63-10 at 2) Bambarger admits his experts' opinions are "speculative as to

---

[1] Three separate manufacturers contributed to the production of the Tree Step: Hindley Manufacturing (initial design and construction), Stokes Metal Treating (heat treatment), and Mid States Plating (final plating).

2

the manufacturing process and when the hydrogen was introduced during that process." (Defs.' Mot. for Summ. J. Hr'g 8:5-12, ECF No. 62 at 8).

Bambarger now argues, however, his experts' opinions were not final, and he has requested additional discovery before the court issues a summary judgment ruling. In a Rule 56(d) affidavit, he asks for the depositions of Ameristep's corporate designee, Defendants' experts, and representatives of the three manufacturers, but does not state exactly what additional information he expects to obtain or how it would preclude summary judgment. (Pls.' Aff. at ¶ 2-5, ECF No. 56-4)

II.

Bambarger must support his claim with expert testimony. Having only speculative expert opinions on which to rely, the court finds Bambarger cannot prove his case. The court also declines to allow Bambarger to take additional depositions in an attempt to shore up his experts' opinions after having had an adequate opportunity for discovery.

A.

An award of summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating after adequate time for discovery the pleadings, depositions, interrogatories, admissions, and other affidavits show that the nonmoving party will be unable to prove an essential element of his or her case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("complete failure of proof concerning an essential element . . . renders all other facts immaterial"). Facts are viewed in the light most favorable to the non-moving party. See Lee v. York County Sch. Div., 484 F.3d 687, 693 (4th Cir. 2007). To withstand a motion for summary judgment, the nonmoving party must introduce specific facts

3

indicating that he or she will in fact be able to prove the essential elements at trial. The nonmoving party may not rely on a mere scintilla of evidence but must provide sufficient evidence such that a reasonable jury could find in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Because Bambarger's injury occurred in Virginia, Virginia law controls. Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993). To prevail on a manufacturing defect claim in Virginia, the plaintiff must prove the product contained a defect that rendered it unreasonably dangerous for its ordinary or foreseeable use; that the defect existed when the goods left the defendant's hands; and that the defect actually caused the plaintiff's injury. Alevromagiros, 993 F.2d at 420. A plaintiff who relies on expert testimony to prove an element of his or her claim must comply with Fed. R. Evid. 702(b) and 703, which require that an expert's opinion be based in fact, not subjective belief or unsupported speculation. "Virginia courts require experts to state their opinions to a reasonable degree of certainty or probability." Lone Mountain Processing, Inc. v. Bowser-Morner, Inc., 2005 WL 1894957, at *14 (W.D. Va. Aug. 10, 2005) (citing Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 972 (4th Cir. 1990)). "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994).

Here, Bambarger cannot establish the Tree Step had a manufacturing defect, an evidentiary deficiency fatal to his claim.[2] His experts could not say to a reasonable degree of probability that hydrogen was introduced at all during the manufacturing process. They also had no facts about the manufacturing of the Tree Step from which they could reliably conclude

---

[2] Defendants only distributed and sold the Tree Step, but "Under Virginia law, . . . manufacturers and sellers of defective products can be held liable on theories of negligence and breach of the implied warranty of merchantability." Bly v. Otis Elevator Co., 713 F.2d 1040, 1042-43 (4th Cir. 1983).

4

hydrogen was introduced. To the contrary, Dr. Kampe, upon whom Bambarger relies solely for opinions about the introduction of hydrogen, admitted to speculating. The court must exclude expert opinions based upon speculative assumptions and will do so here. Having no other evidence establishing a manufacturing defect before it, the court finds Bambarger lacks proof of an essential element of his case.

B.

Bambarger's Rule 56(d) affidavit and other requests for additional discovery cannot save his case. "Summary judgment is appropriate only after 'adequate time for discovery.'" Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must refuse a motion for summary judgment "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." Oksanen v. Page Memorial Hosp., 912 F.2d 73, 77–78 (4th Cir.1990) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986)). But where the court has not stayed discovery and no discovery requests remain outstanding, the nonmoving party has the burden to explain why he or she cannot adequately oppose a motion for summary judgment. Shortt v. Richlands Mall Associates, 781 F. Supp. 454, 456 (W.D. Va. 1991) (quoting Fed. R. Civ. P. 56).

Bambarger has not met his burden. This case involves a product manufactured over sixteen years ago by three non-party manufacturers. During the months of discovery before Bambarger produced his Rule 26(a)(2) expert reports, he obtained relevant information from Defendants and others. Bambarger only recently raised the issue of needing more time and information to "finalize" his experts' opinions after Defendants deposed them and moved for summary judgment. This parallels a request to file a supplemental expert report after an

5

unsuccessful *Daubert* hearing in an effort to cure the inadmissibility of the expert testimony, which other courts have often found troublesome and refused to allow. See, e.g., Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244, 249 (6th Cir. 2001); Piscopo v. Sec'y of Health & Human Servs., 66 Fed. Cl. 49, 55 (Fed. Cl. 2005) (disallowing new expert); Lippe v. Bairnco Corp., 99 F. App'x 274, 280 (2d Cir. 2004) (same). The rules should favor according some finality to an expert's opinion offered in a deposition. As noted by the Supreme Court, it is "implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." Weisgram v. Marley Co., 528 U.S. 440, 455 (2000) (affirming judgment as a matter of law after court of appeals concluded the sole evidence supporting plaintiff's product defect claim at trial was expert testimony, and that testimony proved speculative). Both fairness and the Federal Rules of Civil Procedure underscore the importance of being able to rely on an expert's report and deposition testimony as his "best expert evidence." See Fed. R. Civ. P. 26(a)(2)(B)(i) (expert's written report must contain "a complete statement of all opinions the witness will express"); Fed R. Civ. P. 30(a)(2)(A)(ii) (requiring leave of court for a party to depose a deponent a second time in a case). Expert's should not be "'moving targets' whose opinions [are] constantly changing and being supplemented in order to overcome proper pretrial procedures." Pride v. BIC Corp., 218 F.3d 566, 579 (6th Cir. 2000) (citing In re TMI Litigation Cases Consolidated II, 922 F. Supp. 997, 1005 (M.D.Pa. 1996)).

Bambarger's Rule 56(d) affidavit does not change the result. Rule 56(d) is not intended as a mechanism for correcting an expert's deposition. Moreover, Bambarger does not state with any precision what additional information he expects to obtain from additional depositions or how that additional discovery would preclude summary judgment. (Pls.' Aff. at ¶ 2-5, ECF No.

56-4) "Rule 56(d) does not allow parties to engage in a 'fishing expedition.'" Zimmerman v. Novartis Pharm. Corp., 287 F.R.D. 357, 364 (D. Md. 2012). Instead, "[t]he party must satisfy the court that genuine issues may develop with further discovery." Shortt, 781 F. Supp. at 457. Given the circumstances, including the age of the Tree Step and the thorough, adequate, and lengthy discovery to date, the court finds that Bambarger has failed to show a reasonable probability that additional, useful evidence will develop. Despite his efforts, Bambarger simply does not have facts to support his theory, and the court finds that additional, costly discovery is unwarranted.

### III.

For the reasons stated, the court will grant Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

**ENTER**: November 29, 2013.

UNITED STATES DISTRICT JUDGE